■ TWANA SMITH-JOHNSON et al., Appellants, v NAGARAJ GABBUR, Defendant, and SUSHMA NAKRA et al., Respondents. [885 NYS2d 330]—

In an action, inter alia, to recover damages for medical malpractice, etc., the plaintiffs appeal from an order of the Supreme Court, Kings County (Rosenberg, J.), dated December 7, 2007, which granted that branch of the motion of the defendants New York City Health and Hospitals Corp., Coney Island Hospital, and Sushma Nakra which was for summary judgment dismissing the complaint insofar as asserted against them.

Ordered that the order is reversed, on the law, with costs, and that branch of the motion of the defendants New York City Health and Hospitals Corp., Coney Island Hospital, and Sushma Nakra which was for summary judgment dismissing the complaint insofar as asserted against them is denied.

On June 25, 2003, at approximately 6:30 P.M., the plaintiff Twana Smith-Johnson (hereinafter the injured plaintiff), who at the time was approximately 31 weeks pregnant, arrived at the emergency room of the defendant Coney Island Hospital (hereinafter the hospital), a facility operated by the defendant New York City Health and Hospitals Corp. (hereinafter HHC), complaining of abdominal pain. At approximately 7:15 P.M., the defendant Sushma Nakra, the obstetrical attending physician on duty that evening, diagnosed the injured plaintiff with pre-eclampsia, and determined, based on a fetal monitor, that the fetus was suffering from fetal bradycardia, i.e., fetal heart rate of less than 100 beats per minute. Nakra recorded the injured plaintiff's blood pressure at 7:15 P.M. as 185/85, and a pre-anesthesia record indicates that her blood pressure at 7:25 P.M. was 201/106. At approximately 7:33 P.M., Nakra performed an emergency cesarean section on the injured plaintiff, delivering the baby at 7:35 P.M. After the cesarean section, Nakra noted that the injured plaintiff had suffered from a "complete placental abruption," a diagnosis also noted by hospital staff in the anesthesiology records, the initial newborn profile, and in two progress reports dated June 25, 2003.

Postdelivery, the injured plaintiff was unable to move her left side and she was found to have suffered a cerebrovascular accident, i.e., a stroke. At approximately 8:30 P.M., the injured plaintiff's blood pressure was around 170/100, at which point Hydralazine, an antihypertensive agent, was first administered to her. She was then transferred to Maimonides Medical Center where she underwent surgery to evacuate a large, intraparenchymal hematoma.

The injured plaintiff, with her husband suing derivatively, thereafter commenced the instant action against, among others, Nakra, HHC, and the hospital (hereinafter collectively the hospital defendants), seeking, inter alia, to recover damages for medical malpractice. The gravamen of the plaintiffs' allegations is that the hospital defendants negligently failed to treat the injured plaintiff's hypertension prior to and during the cesarean section with fast-acting antihypertensive medications, and that as a result she suffered a stroke during the cesarean section.

After joinder of issue and the completion of some discovery, the hospital defendants moved, inter alia, for summary judg-

ment dismissing the complaint insofar as asserted against them on the ground that, as a matter of law, they were not liable for medical malpractice in their treatment of the injured plaintiff. In support of the motion, the hospital defendants submitted affirmations from Dr. Frank Manning, a board certified specialist in obstetrics, gynecology, and maternal fetal medicine, and Dr. Elizabeth Frost, a board certified anesthesiologist. The Supreme Court awarded summary judgment to the hospital defendants, finding that they established, prima facie, through the affirmations of their experts, that they did not depart from good and accepted medical practice in their treatment of the injured plaintiff, and therefore, could not, as a matter of law, be held liable for her alleged injuries. The court also held that the plaintiffs failed to raise a triable issue of fact in opposition to the hospital defendants' prima facie showing by submitting, inter alia, affidavits of a board certified obstetrician/gynecologist (hereinafter OB/GYN) and a board certified anesthesiologist. We reverse.

We agree with the Supreme Court that the hospital defendants established, prima facie, through the affirmations of their experts, that they did not depart from good and accepted medical practice in their treatment of the injured plaintiff (*see Sheenan-Conrades v Winifred Masterson Burke Rehabilitation Hosp.*, 51 AD3d 769, 770 [2008]; *Rebozo v Wilen*, 41 AD3d 457, 458 [2007]; *Williams v Sahay*, 12 AD3d 366, 368 [2004]). Specifically, both experts opined, within a reasonable degree of medical certainty, that the most appropriate treatment for the injured plaintiff was an emergency cesarean section performed under general anesthesia, in light of her pre-eclampsia, hypertension, and suspected placental abruption. The experts explained that general anesthesia and delivery naturally lowers the blood pressure, as does the blood loss resulting from a placental abruption, and thus, had the injured plaintiff been treated with hypertensive medications prior to or during the cesarean section, it would have placed her and the fetus at risk of a hypotensive emergency. Dr. Frost further noted that even if the injured plaintiff had been "bucking" after extubation, i.e., involuntarily attempting to remove her extubation tube, "this was during the period of time when the patient had already been observed not to be moving her left side," and thus, such bucking could not have proximately caused her alleged injuries.

In opposition, however, the plaintiffs raised a triable issue of fact through the submission of, inter alia, the affidavits of a board certified OB/GYN and a board certified anesthesiologist, both of whom opined that the hospital defendants "departed

from accepted standards of care in failing to . . . implement an appropriate scheme of care," given the injured plaintiff's presentation at the hospital as pregnant and with a high blood pressure "of unknown duration" (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324-325 [1986]; *Rebozo v Wilen*, 41 AD3d at 458; *Domaradzki v Glen Cove Ob/Gyn Assoc.*, 242 AD2d 282 [1997]). Indeed, the expert OB/GYN retained by the plaintiffs noted that although it was clear that the injured plaintiff was hypertensive when she arrived at the hospital at approximately 6:30 P.M., the hospital defendants failed to administer any hypertensive agent to her until two hours later, during which time it would have been appropriate to administer a fast-acting medication to her such as Labetalol, which is a combination of alpha blockers to address the hypertension and beta blockers to address the heart rate. Alternatively, during such time period, the hospital defendants could have administered other medications to the injured plaintiff such as Nitroprusside or Nitroglycerine, which are similarly short-lived in the body and would have controlled the injured plaintiff's hypertension within one or two minutes at no risk to her or the fetus. Put differently, the plaintiffs' expert OB/GYN indicated that treating the injured plaintiff with a fast-acting, short-lived hypertensive agent in the hour before or after the cesarean section would have quickly alleviated the hypertension without placing her or the fetus at any risk despite the possibility of a placental abruption.

Moreover, both of the plaintiffs' experts noted that, contrary to a postoperative note written at 9:20 P.M., which indicated that postsurgery, the injured plaintiff's blood pressure remained stable at 144/88 until 8:30 P.M., the contemporaneous hospital records indicated that after the baby was delivered at 7:35 P.M., the injured plaintiff's blood pressure fluctuated dramatically, rising from 144/88 at 7:45 P.M., 10 minutes after delivery, to 160/90 several minutes later, and spiking to more than 170/100 before 8:30 p.m. According to the plaintiffs' experts, such blood pressure readings should have made it apparent to the hospital defendants that general anesthesia and delivery had been insufficient to control the injured plaintiff's hypertension. Nevertheless, the hospital defendants did not administer Hydralazine, a hypertensive agent, to the injured plaintiff until 8:30 P.M., well after she had already suffered a stroke.

The plaintiffs' expert anesthesiologist added that the hospital defendants departed from the accepted standard of care by allowing the injured plaintiff to "buck" for 20 minutes after being extubated. Moreover, the plaintiffs' expert anesthesiologist noted that Dr. Frost's assertion that hypertensive medication

was not warranted before and during the cesarean section because of concerns of a placental abruption, was belied by the postoperative administration of Hydralazine, which is not used if there is a concern about bleeding because it is slow-acting and stays in the body for a long period of time. In addition, given that the injured plaintiff's pre-eclampsia was severe enough to cause high blood pressure and tachycardia, general anesthesia was actually contraindicated, as it posed the risk of "rais[ing] intracranial pressure."

Accordingly, since the plaintiffs raised triable issues of fact in opposition to the hospital defendants' prima facie showing of entitlement to judgment as a matter of law, the Supreme Court erred in granting that branch of the hospital defendants' motion which was for summary judgment dismissing the complaint insofar as asserted against them (*see Alvarez v Prospect Hosp.*, 68 NY2d at 324-325). Spolzino, J.P., Santucci, Belen and Lott, JJ., concur.